JUSTICE NELSON
dissents.
¶22 I respectfully dissent from the Court’s Opinion.
¶23 First, the “compensation” granted to Michael (Opinion, ¶ 19) is illusory. Granting Michael part of a day to retain counsel when the trial had already begun and then allowing him thirty days to retain counsel after the trial had ended is no accommodation at all. No attorney is going to walk into a contested case mid-trial without any opportunity to educate himself or herself about the client and the case or, even worse, try to salvage a case after the trial is over and the *262 damage has been done. The court’s “compensation” to Michael was simply an invitation for some attorney to commit malpractice.
¶24 Furthermore, the trial court ignored the plain language of § 37-61-405, MCA, and U. Dist. Ct. R. 10. The language of each is plain and unambiguous. When counsel for a party “is removed” or “ceases to act,” the statutory and Rule-based notice must be given, and the party without counsel has twenty days to appoint new counsel. Contrary to the language that this Court now reads into the statute-in direct violation of § 1-2-101, MCA-and into the Rule, there is no prohibition against a party terminating the services of counsel on the eve of trial, or for that matter, during trial, where counsel is not representing the client as the client wishes. Nor is there any language in either the statute or the Rule that limits the protections afforded to those situations where counsel withdraws more than twenty days from the next proceeding or where counsel has left the client “hanging ‘out to dry.’ ” Opinion, ¶¶ 17-18.
¶25 These new “tests” articulated in the Court’s Opinion at ¶¶ 17 and 18 are without any foundation in the actual language of either the statute or the Rule. Rather, as is obvious, these new requirements are judicially created from whole cloth and engrafted onto the statute and Rule given a palpable desire on the part of the Court to affirm this matter. Indeed, the Court cites not one authority supporting its creation of these new tests.
¶26 Moreover, this Court’s decision in Quantum Electric, Inc. v. Schaeffer, 2003 MT 29, 314 Mont. 193, 64 P.3d 1026, does not support the Court’s decision here. In that case, noting a “disparity” in the precedent interpreting the statute and the Rule, we observed that the present statute and Rule have a lineage dating back to 1895 and have been “strictly enforced.” Quantum, ¶¶ 16-17 (citing Endresse v. Van Vleet, 118 Mont. 533, 538-39, 169 P.2d 719, 721 (1946)). We also emphasized that the notice must meet the requirements of the statute, and that one which does not, is ineffective. Quantum, ¶¶ 18, 19 (citing McPartlin v. Fransen, 178 Mont. 178, 185, 582 P.2d 1255, 1259 (1978); In re Marriage of Whiting, 259 Mont. 180, 184, 854 P.2d 343, 346 (1993); In re Marriage of Neneman, 217 Mont. 155, 159, 703 P.2d 164, 166 (1985); Montana Bank v. Benson, 220 Mont. 410, 412, 717 P.2d 6, 7 (1986)).
¶27 Additionally, citing with approval our decision in Stanley v. Holms, 281 Mont. 329, 934 P.2d 196 (1997), we noted in Quantum that, where counsel withdrew in part due to an inability to communicate with his client in furtherance of the case, “it was unfair to allow the *263 case to proceed while the withdrawal motion was pending” and that “opposing counsel had a duty to give the notice required by § 37-61-405, MCA ....” Quantum, ¶ 20 (citing Stanley, 281 Mont. at 337, 934 P.2d at 201). We further stated in Quantum that
“[w]hile this may pose some added inconvenience to the represented parties required to give the notice, ... this burden is insubstantial when compared to the potential detriment that may be suffered by a litigant whose counsel has ceased to act on his client’s behalf.”
Quantum, ¶ 20 (quoting Stanley, 281 Mont. at 337, 934 P.2d at 201; see also McWilliams v. Clem, 228 Mont. 297, 310, 743 P.2d 577, 585-86 (1987)).
¶28 Moreover, we concluded in Quantum that the rule articulated in that case was in line with this Court’s policy favoring judgment on the merits of a case. Quantum, ¶ 29 (citing Maulding v. Hardman, 257 Mont. 18, 23, 847 P.2d 292, 296 (1993)).
¶29 Finally, and directly contrary to the Court’s decision and concurring opinion here, we held in Quantum that even where the unrepresented party becomes unrepresented because of obstructionist tactics or the inability to communicate with counsel (even with consecutive attorneys); seeks to defeat the judicial process; benefits from obstructionist behavior; or had actual notice of the proceedings, § 37-61-405, MCA, must be followed. Quantum, ¶¶ 24-27.
[Considering the relative ease with which proper notice is given and in light of our precedent that the word “must” is mandatory ... we hold that in order to properly protect the interests of the unrepresented party, the opposing party, as required by the plain language of § 37-61-405, MCA, must require the unrepresented party, by written notice, to appoint another attorney or appear in person....
By providing this clear rule, we do not intend to condone those who simply ignore the judicial process, but instead intend to provide a simple tool for those opposing them to proceed with their cause of action, secure in the knowledge that any judgment in their favor is final. Once proper notice is given, any continued refusal to participate in the proceedings by an unrepresented party may justly result in default judgment or other final judgment against their interests.
Quantum, ¶¶ 27, 28 (internal citations omitted).
¶30 We then went on to overrule two cases—Audit Services v. Kraus Const., Inc., 189 Mont. 94, 615 P.2d 183 (1980), and Sikorski & Sons, *264 Inc. v. Sikorski, 162 Mont. 442, 512 P.2d 1147 (1973)-to the extent those cases waived a failure of opposing counsel to comply with § 37-61-405, MCA. Quantum, ¶ 30. While, the concurrence maintains these cases are inapposite (Concurrence, ¶ 37), our point in overruling these decisions was to preserve the requirement of strict compliance with the unambiguous notice mandates of the statute and to preserve our policy favoring judgment on the merits. See Quantum, ¶¶ 24-26, 29.
¶31 In short, Quantum does not support the additional language and tests the Court has read into § 37-61-405, MCA, and U. Dist. Ct. R. 10, in this case. Indeed, our case law stands for precisely the opposite rule.
[T]he general rule from [our prior] cases is that the opposing counsel has a duty to make a good faith effort, by written notice, both to notify the unrepresented party that he should retain counsel or appear in person and to notify the unrepresented party regarding the nature and timing of the next pending proceeding. Further, when a party loses representation and this duty is not fulfilled, the proceedings in the case are tolled until the notice requirements of § 37-61-405, MCA, and [U. Dist. Ct. R. 10] are met.
Quantum, ¶ 21.
¶32 Indeed, today, the Court ignores overwhelming precedent to create-from whole cloth and without any underpinning authority-a new rule. For the first time in our jurisprudence, we now insert a time requirement and an “intention” or “mental state” requirement into our case law interpreting the mandatory notice requirements of § 37-61-405, MCA, and U. Dist. Ct. R. 10. Apparently, no notice is required if the cessation or removal from representation occurs twenty or less days from the next proceeding. Opinion, ¶ 17. However, counsel will need to plumb the mindset of the unrepresented client and his or her counsel, and the trial court will, of necessity, need to hold an evidentiary hearing and enter findings of fact and conclusions of law determining the motivations of the unrepresented party in removing counsel or the motivations of counsel in ceasing to act. If the cessation or removal fails the “hanging-out-to-dry” test or the litigant-is-wresting-control-of-the-proceedings-from-the-District-Court test or the “assault-on-the-functioning-of-the-judicial-system” test (Opinion, ¶ *265 18)[1]-the elements and application of these tests evidently being determined on an ad hoc, case-by-case basis-then the unrepresented party is deprived of the benefit of the notice requirements of the statute and the Rule.
¶33 We adopt this new non-statutory approach simply to affirm the trial court and to deprive the litigant of the benefit of the clear and unambiguous requirements of a statute and Rule because we viscerally believe that Michael’s “eleventh-hour” (Opinion, ¶ 19) conduct should be punished. However, neither we nor the trial court need ignore the plain language of § 37-61-405, MCA, and U. Dist. Ct. R. 10, to punish Michael. We stated in Quantum that our decision there was “in no way intended to limit the sanctions available to the trial court for unresponsiveness to discovery requests or other sanctions available under the rules.” Quantum, ¶ 30 (citing M. R. Civ. P. 37). Michael can be punished without depriving him of the notice protections afforded by the statute, the Rule and our precedent. Notwithstanding its authority to punish, the trial court still has a clear statutory obligation to require opposing counsel to give the notice required by § 37-61-405, MCA, and U. Dist. Ct. R. 10, and to toll the proceedings until the mandates of the Rule have been fulfilled. Punishment can follow once the proceedings recommence and the unrepresented litigant’s statutory twenty days has run.
¶34 Unfortunately, the sort of decision-making in which the Court engages here creates confusing precedents, encourages the practicing bar to ignore the law, and will inevitably result in more appeals to this already over-burdened Court. Section 37-61-405, MCA, U. Dist. Ct. R. 10, and the clear rule of our case law mandate that the District Court be reversed. I would so hold.
¶35 I dissent.

 The trial court’s decision here was not grounded in any of these arguments or tests. To the extent that we can glean the District Court’s rationale from the record before us, it appears that the court believed that once a trial date had been set for some undefined period of time (“too long,” in this case) the statutory notice requirement was obviated and, moreover, that the statutory notice requirement applied only in criminal cases, but not in civil cases, as there was no “right to counsel” in the latter. See Transcript of Proceedings 2:14-19 (September 20 and 21,2006). There is no basis in our black-letter or jurisprudential law for either of these approaches, and the trial court manifestly erred in ruling on that basis.